Our last case this morning is case number 417-0548, Illinois State Bar Association Mutual Insurance Company v. Leighton Legal Group. For the appellant is Robert Chemmers. Is that pronounced correctly, sir? Okay, I should know. I've been here enough. Chemmers, okay. And for the appellee is Ms. Burgess. Is that pronounced correctly? Burgess, okay. Let me make a quick note of that, Burgess. Thank you. Okay, Mr. Chemmers, you may proceed, sir. Good morning, Your Honors. May it please the Court, Counsel, for the plaintiff appellant, Robert Chemmers, on behalf of I.S.B.A. Mutual. This is an appeal from right down the street, Seventh Circuit Court. This is a duty to defend case. Historically, and I believe currently, duty to defend is determined by the eight corners. The four corners of an insurance policy are read in light of the four corners of the allegations of a complaint. You look at the complaint, you look at the policy. Either the claim is covered or it is potentially covered. Here we have a nine-count verified complaint. There is no argument from the defendants that counts 1, 2, 3, and 9 trigger coverage. 1, 2, 3, and 9 seek either declaratory, injunctive, or accounting relief. The parties agree on a few things, one of which is that for my client, I.S.B.A. Mutual, they have a duty to defend. There must be allegations of a wrongful act as defined by the policy. There isn't a wrongful act alleged in counts 1, 2, 3, and 9. They seek declaratory or injunctive relief, but not damages. And those counts do not involve damages caused by a wrongful act. A wrongful act is defined as a negligent act, error, or omission in the rendering of or failure to render professional services. Counsel, with respect to the counts that you indicate don't seek damages, so to speak, your opposing counsel suggests that we should still consider those counts in terms of, I guess, getting a feel for the nature of the complaint, the nature of the allegations in the complaint, and whether or not there is coverage, a duty to defend. What are your thoughts on that? Thoughts on that, Your Honor, are first of all, as this Court knows, and we would be remiss if we didn't agree, the totality of the complaint must be looked at. Every aspect of the complaint must be considered. And yet, you don't take snippets out of a 147-paragraph verified complaint to find coverage. Now, what they point to, and what the trial court pointed to, is there is an allegation that there is an ambiguity in one of the trusts. And their theory of the case is they should not be held hostage to the underlying plaintiffs' allegations of intentional and willful conduct, because if you really look at it, according to what the defendants say at page 36 and 37 of their brief, the underlying plaintiffs, who are the beneficiaries of the trust, were really of the mind that Leighton incorrectly interpreted the language of it. They put it in legal documents, and the plaintiffs are dissatisfied with the decisions Leighton has made in managing the trust. Well, that's not what they allege, and you have to look at the facts. You don't look at the legal theories. Counsel, that brings me to my next question. So when we look at the complaint, are we looking at it in terms of, is there conceivably some fact pattern or allegation we could come up with that would suggest that this is negligent, or are we stuck with the actual language of the allegations in the complaint? To use your phrasing, you are stuck with the allegations of the verified complaint. And this complaint, they say there's an ambiguity in a trust, so they're really dissatisfied with the way they interpreted it and dissatisfied with the way they managed the trust fund. But that's not what this complaint's about. This complaint in counts 5, 6, 7, and 8 alleges willful, intentional conduct and seeks punitive damages. Now, that doesn't speak to a negligence scenario. They allege the entire manner and method of the management of the trust by Leighton and others was a self-compensation scheme to overcompensate himself through his position, grossly excessive fees, collecting exorbitant fees to profit personally, willful refusal to liquidate the trust, willful breach of trust, acted in bad faith, putting his self-interest before the interests of the beneficiaries. The entirety of the complaint, except for the snippet that a document may have been ambiguous, and not accusing Leighton of improperly drafting that document, goes to intentional conduct. There are five counts that seek damages. Count 4 seeks to disgorge all the fees that were earned. Well, under the ISP and mutual policy, that count doesn't have a wrongful act, and it doesn't have covered damages. So that's out. 5, 6, 7, and 8 allege willful, intentional conduct and seek punitive damages. You have to look at the complaint in its four corners in the light of the four corners of the policy and its insuring agreement. Now, this policy extends coverage to a suit seeking damages, which is a defined term in the policy, arising out of a wrongful act. So you need covered damages that are allegedly caused by a negligent act, error, or omission in the rendering of or failure to render professional services. In their brief, the defendants do not point this court to one of the 147 paragraphs that alleges a negligent act. What they look at is they say, this could be the downfall of this case. They say these claims are all based on intentional conduct. However, they could just as easily be based on negligent conduct. And that's not enough. It's not enough. Because that would mean, let's say this court affirms and makes that the rule. Then it's going to be in every court where there's a declaratory judgment, the attorney for the insurance company is going to argue. Every count in this lawsuit is intentional. We have a negligent act policy. The court said, well, there's a duty to defend because any one of these claims could be considered negligent. But that's not what they allege. But it could be amended at any time to plead negligence. Well, for someone like myself who is either standing in a court like this arguing a coverage issue or in a circuit court arguing there's no duty to defend, I'd have nothing to do. Declaratory judgment practice would be over. If the court were to say, we don't have to look at the facts and determine if there's a potential for coverage. We look at the causes of action and say they could be supported by allegations of negligence, but they're not. You have to look at the complaint you have. You can't look at a hypothetical complaint. The second district of this court in Pekin Insurance v. Precision, those held just that. You can't look at something that doesn't exist. You can't say it could be amended, therefore it might be covered. We're not dealing with a hypothetical complaint. We're dealing with this complaint. That's like looking at your cards. No matter how long you stare at a heart, you can't turn it into a club to fill a flush. You play the hand you're dealt. Well, the court analyzes the complaint that was filed, not the complaint that could be amended down the road. The exclusion provision talks about intentional conduct, but it's really intentional misconduct, isn't it? For instance, if I'm a lawyer and I intend to file my lawsuit on behalf of my client on October 1st because I misunderstood when the statute of limitations is going to run, but I intended to do it, and I filed it and the statute of limitations is running, my case is thrown out for that reason, would you say, well, that was intentional conduct, so we're not covered? No, I would say that would be a negligent act error or omission. Okay, but I have a little trouble because it seems to me when we're dealing with, if the insurance company means to exclude coverage for intentional misconduct, I'd be a lot happier if that's what they said instead of intentional conduct because intentional conduct seems to be more broad. Well, we're looking at this, Your Honor, from the standpoint of there is no negligent act error or omission alleged. We're not looking at it saying this falls within the intentional act exclusion. That's almost a belt and suspenders argument. We don't need exclusion A. We can't find in this 147-paragraph complaint the negligence allegation, and we know if this was a 10-count complaint and count 10 pled negligence, we wouldn't be here because as long as one claim is covered, there's a duty to defend all of them. Well, we don't have that one claim here. So where did the trial court go wrong by denying your complaint? Oh, I always love that question. Where did it go wrong? It went wrong by saying that he found allegations of negligence. There's an allegation of an ambiguity in a trust document. There is no allegation of negligent conduct on the part of Timothy Layton or his law firm. In fact, the entirety of the complaint is just the opposite. And what the defendants are arguing to this court is look at the merits of the allegations. Well, that has been raised and rejected by just about every court that's been presented with look at the merits. It doesn't matter if he actually committed an intentional act. What matters is he's alleged to have done that, and by being alleged to have done that, that eliminates an allegation that he acted in a negligent manner. There's a theme in this complaint. The theme of this complaint is this was a compensation scheme. They even specifically allege, under oath in their verified complaint, that Layton and his friends, who were running the trust, received in excess of $450,000 in fees from a trust that lost over $300,000. That is what they're saying. It was the management of the trust existed for a compensation scheme for himself and his friends. Grossly excessive, exorbitant fees. Whether it's true is irrelevant because it's alleged, and it's the allegations that determine the duty to defend, not the validity of those allegations. No court has ever held that. That would – that, too, would be the end of a declaratory judgment practice. No court has ever held that an insurer has a duty to defend because a claim could be based on negligent conduct. Justice Holder, that's your question. Justice White, that's your question. But whether claims are based on negligent conduct, these claims are not based on negligent conduct. The defendants say we shouldn't be held hostage to the strategic decisions of the plaintiffs. We shouldn't be locked into their allegations. We should be able to explain the allegations with extrinsic evidence. That's not how you determine the duty to defend. Even the Supreme Court in Pekin v. Wilson said you can't go that far. You can't look at those allegations and say, well, they're not really true because I didn't do those things or my client didn't do those things. Here we have the plaintiffs chose an aggressive, as they call it, plaintiffs chose an aggressive litigation strategy and used inflammatory language to characterize Lake's conduct. Look past the language. Look – and don't hold the policy to its limits. Well, the policy says what it says. And that's the touchstone. That's what the defendants have ignored. Interestingly enough, this is one of the few coverage cases I've ever argued where there is no contention by the insurer that any aspect of this policy is anything other than clear and unambiguous. There is no contention of ambiguity. None. So the policy is not the problem. The problem here is the verified complaint. The policy clearly sets forth the test. Is there a suit seeking damages, and it's a defined term so they have to be covered damages, arising out of a wrongful act, negligent act, error, or omission? 147 paragraphs. There's not one allegation of a negligent act. Now, the defendants argue that to the extent the criticisms are well-founded, at page 36 and 37 of their brief, quote, it is highly probable that the conduct was the result of negligence. How can you possibly make that conclusion based on the allegations of a verified complaint other than to say, we don't care what the complaint alleges. He didn't do it. And then they come back with a statement of facts and an appendix in their appellate brief, to strike with this case, where they have the dismissal order entered in Washington, D.C. in the probate court there, where the case was dismissed on settlement. But two months after this appeal was initiated, so it was not in the record, obviously not considered by the trial court, we'd ask this court not to consider it, and they should be stricken. Because what they're saying is, this is an interest to the court, as they put it, potential interest procedurally. Well, I don't think this court inquires about what happens where, after a judge in the circuit court says there's a duty to defend. We're not interested in that. It doesn't matter. It shouldn't matter. And that order serves no purpose other than to allow them to argue, not in the brief, but in the response to the motion to strike, that what that order shows is what's not there. Layton didn't pay anything. There were no assessment of punitive damages, no finding of willful conduct. Well, that's all irrelevant. That's highly prejudicial to the insurer here, and that's why we ask that it be stricken. We'd ask the court to grant that motion. What we have in this case is nothing but inherently intentional allegations, and the defendants argue to the extent the allegations have any merit, they involve professional negligence. And because Layton bought a policy that was geared for lawyers, and he was acting as a lawyer, as a fiduciary, and the policy includes in the definition of professional services, acting as a fiduciary, he must be covered. Well, neither this court nor any reviewing court in Illinois has yet to adopt the doctrine of reasonable expectations. In other words, you pay a premium, you have coverage. That's not the law in Illinois. And again, we don't want ISPA mutual versus Layton to be the decision that says doctrine of reasonable expectations. Or because it could be based on negligence, although it's not pled, there's a potential. Well, that's not a potential. That would take an amendment by the plaintiff. These plaintiffs obviously saw fit to plead the way they did, and the way they did is intentional and verified. Then they're made parties to the declaratory judgment action, and even after they're aware of the insurance company's position, they didn't file an amended complaint to plead the negligence count. That, of course, would have been the transparent attempt to plead into coverage, and you can't do that in Illinois. This court's held that twice. For all of these reasons, unless there are other questions, I'd like to save my time for rebuttal, and I'd ask this court to reverse and enter judgment for ISPA mutual, or reverse with directions to the circuit court to enter judgment. Thank you. Thank you, counsel. Ms. Bergus. May it please the court? Good morning. My name is Amelia Bergus, and I'm appearing today on behalf of Timothy Layton and the Layton Legal Group. Obviously, this is a case involving the duty to defend, and whether or not the trial court properly found that under the allegations contained in the underlying complaint and the nature of the underlying insurance policy, there was a duty to defend. By way of background, the duty to defend is a very wide inquiry, and there are a couple of areas where I would agree with Mr. Chemers and some of his assertions he made to the court. But for the most part, I believe he is reaching a conclusion that is inconsistent, both with the status of the law and the actual language of the complaint that is at issue here, the underlying complaint filed in the District of Columbia. The duty to defend is very broad. It applies to any instance where the coverage falls within or potentially within coverage under the policy. So the initial status is almost a presumption that there would be coverage. And the question then becomes, can we rule out any possibility that under the language of the complaint that there was no coverage? And in this instance, and I'll point to some very specific language in a moment, that is not possible here. Counsel, what role does the specific, or what role do the specific allegations in the complaint play in this analysis? Your Honor, they play a very important role. But I think in this particular complaint, we can distinguish between the different allegations. We have allegations that are factual in nature, that point to the actual dispute between the parties, and they fall into a number of different categories. There are allegations that Mr. Leighton misinterpreted documents. That alone is an area of complaint. And one clearly premised in potential negligence or professional negligence. We have allegations that the underlying complaint, that the plaintiffs there, were dissatisfied with how he administered the trust, both in the individuals he hired to manage trust assets, as well as how he actually himself managed the trust assets. And then there are also allegations that they believe he charged fees that were unreasonable. Then we have a separate category of allegations, and those I would refer to as conclusory allegations as to motive. And that is really the crux of the argument and the difference, I think, here between the parties. ISBN Mutual is arguing today that allegations of motive can in some way transform a complaint that otherwise reads in negligence into something that it is not, and into something that is intentional. In this particular underlying complaint, all the causes of action alleged against Mr. Leighton and the Leighton Legal Group are causes of action that are firmly grounded in negligence. Breach of trust, breach of fiduciary duty. Breach of fiduciary duty in the state of Illinois is considered to be duplicative of a claim for professional negligence. There are no allegations of intentional tort here. No fraud, no conspiracy, no conversion, no theft. No intentional torts have been alleged in this case. This complaint speaks constantly of intentional misconduct. I don't understand the argument you're making. Thank you, Your Honor. And it does. Throughout the complaint, there are allegations pointing to potential intentional conduct. And again, what they are doing is assigning motive to actions and to the allegations. But that is not exclusive throughout the complaint. And I would draw the Court's attention to count five as an example. Count five, breach of trust. And we read through this complaint and how it is presented to the Court in the underlying complaint. At all times, defendants Leighton owed a duty. That is a negligence premise. They go on then to discuss how they believe he breached that duty. And then they say that he was a proximate and direct result of cause to the plaintiff. That all right there is premised in negligence. And there's no intentionality looking at the nature of that complaint. And then you look at the language there as well. Despite the fact what else happens in the rest of the complaint here, there are allegations that are not clearly intentional. For example, they say that Mr. Leighton failed to provide reasonable disbursements of income to the beneficiaries of the trust. That in and of itself is an allegation that is outside of any allegations of motive. Why did he fail to do that? That is the question. So if he did it because he's a crook and stealing, that's still an allegation of negligence? And if the rest of the paragraphs of that doubt make it clear he's a crook and he's stealing, that's why he did it, that's still negligence? Your Honor, the question of the motive for why he did it is a heavily factual inquiry. And at this point in time, it would be impossible for the Court to parse out what his motives were. It is without doubt that the plaintiffs in this underlying complaint took a very aggressive posture and were very forthcoming in that. That is an aggressive litigation. Why did the overarching premise of the complaint, that this was a scheme? Your Honor, that is one of the allegations that the underlying plaintiffs do make. However, they also reference to this dispute in the interpretation of the documentation. They reference the fact that there is a dispute as to the appropriate time for Mr. Layton to sell property and his management of the trust. And there is no case law saying that this Court cannot take into account the bigger picture. And, in fact, in some instances has encouraged just that. Prior courts have said the question of coverage should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action. But that same case talks about looking at the allegations in the complaint. Your Honor, of course it does. Because that is a very important part of the equation here. And missing from this particular underlying complaint are allegations that could only sound in intentional misconduct. For example, there is no allegation that Mr. Layton hid anything from the plaintiffs. They complained that he allegedly overcompensated himself. The only reason the plaintiffs know that is because they received frequent reports from him as the trustee. So when you look through that, there is a possibility, of course, as the plaintiffs saw this, that this could have been some broader intentional scheme. But when we kind of get through that and look at really what the allegations are, the allegation is that they are dissatisfied with the representation he provided to them. And if the court were to not take that into consideration and to not look at this with a little bit more detail, it could inadvertently encourage parties to adopt a very aggressive litigation strategy, despite what the actual factual disputes are, in order to gain advantage and to strip an individual, an attorney in this case, of their insurance coverage. That suggests to this Court that we shouldn't pay attention to the complaint. Your Honor, I would ask that the Court distinguish between those prior cases where the courts have said, you know what, based on the factual allegations, there is no possibility here other than that this was intentional misconduct. For example, one of the cases cited by both parties, there was an accusation where the factual allegations were grounded in a kickback scheme. And as we discussed in our brief, that's distinguishable because there's no such thing as a negligent kickback. Well, Counsel, is it your position that if the cause of action alleged could be one found to be in negligence, then if you can show that, then you get passed and you have the duty to defend? No, Your Honor, I think that's broader than our intent here. Our intent here is to say that so long as there are parallel tracks where you can look at the allegations in the complaint and find allegations that are clearly sounded in negligence, as well as allegations of motive that point towards intentionality, in that particular instance, the Court must find that the coverage falls within, or potentially within, ultimate coverage. Did you set them out in specific sections of the complaint so that these are our negligence counts and these are our willful and lawful counts? Your Honor, that is possible to do. Did you do that? No, Your Honor, I did not do that separately in the brief because the question, again, is not necessarily to draw them apart, but to be able to say what is this complaint premised on. Number one, it is clearly premised on causes of action that are negligent in their nature. Breach of trust and breach of fiduciary duty, both in the State of Illinois and in the District of Columbia where this case was filed, are causes of action that may be premised in negligence. Maybe, but they can also be premised in intentional conduct, right? Yes, Your Honor. In some instances, they can. Then we begin to look at the factual allegations contained with this complaint. And what are the factual allegations? I understand that there are some allegations contained in this complaint that accuse Mr. Layton of intentional misconduct. That's not the question. The question for this Court is, are those the only allegations that are contained in this complaint? And as we've discussed in our brief, and as I'd like to draw to your attention here today, there are allegations that are sounded in negligence. This notion that he misinterpreted documents, that his judgment when it came to the administration of property and how it was to be handled was wrong. That alone is not in itself evidence of intentional misconduct. There are allegations that he failed to provide reasonable disbursements of income. Again, that comes to professional judgment and whether or not he acted appropriately as the administrator of the trust. You heard Mr. Chimmers address the motion to strike. Is he correct that that concerned material that arose well after the trial court's decision in this case? Your Honor, it is appropriate, I believe, at the appellate court level, and we've cited cases stating that even materials not on the record may be taken into account by the court, especially when they're ones that are easily verifiable, such as the rulings or judgments of other courts. In this particular instance, the underlying case, there was a judgment and order entered. It's part of the procedural posture, but to be very transparent, is of limited utility because they did not go on to make very specific findings of fact, but there were findings of fact, and it is appropriate, I believe, for this court to be fully apprised. I don't understand the relevancy of what, in deciding whether or not there's insurance coverage, which is the issue, was the issue before the trial court, is the issue before us, how the ultimate resolution of this case, if that's what it was, addresses the issue before us. Yes, Your Honor. I think it is useful for the court to know that no findings of fact were made, and I think if findings of fact had been made that were contrary to Mr. Lane's position here, I think we would be in an opposite position. Why is it useful? Why is that even pertinent? Given the argument Mr. Chalmers made, it seems to me, as a for instance, what if there had been a resolution in the court in D.C. that Layton was a crook and he engaged in a criminal enterprise across the board? Would you have dismissed your appeal or conceded the appeal? Because, gee, look what they concluded. I think at that point in time we would be having a very different argument here today, and then there would be a very different question about how, if at all, that finding were binding on Mr. Layton. Obviously, that's not what happened in this case. In this particular case, they were able to work it out in a very different way. Quite simply, I think it's appropriate to make sure this court is fully advised in what information it might need in order to make a decision. Again, we refer to that particular order in the statement of facts as part of the procedural posture to make the court aware that findings of fact were made, but they weren't necessarily determinative in this particular instance. It doesn't say that, though. Paragraph 6 says the parties stipulate and agree to the entry of this order without trial or final adjudication of any issue of fact or law to settle. There were no findings of fact. This was a consent agreement. Correct, Your Honor. I apologize. I would like to be more specific. The order itself was referred to as findings and order, and that's what I mean, that the court considered that to be a term. Well, they can call it whatever they want, but it's a consent agreement. It's what the parties have consented to, stipulated to, agreed to. Yes, correct, Your Honor. Yes, I apologize that I misspoke slightly there. But overall, the bigger picture here is to look at the point that you just made. There were findings. But one of the findings is that there were no findings, right? Correct, Your Honor. Okay. Thank you. The bigger picture here is when looking at the complaint in its totality, which is something that ISBN Mutual agrees with, is, is this a complaint where we can rule out any possibility that the conduct here complained of was only intentional in its nature? And here where the causes of actions are premise and negligence, where many of the factual allegations about the alleged wrongdoings of Mr. Layton could very well be ultimately determined to be negligence or intentional in their nature. Clearly, we cannot escape the fact that the underlying plaintiffs took a very aggressive posture here and were very dissatisfied. But that does not mean that the court is bound simply by that characterization. It's about looking at the bigger picture. And certainly another fact that the court could take into account is that there were a number of beneficiaries to this trust, and a small number of them chose to bring these allegations. What does the eight corners document mean? Your Honor, when it comes to the contractor interpretation, I believe it means that we look at the literal language of both the policy and the complaint. Not what they were thinking. Not that they're just being aggressive. It's not the thought process of the pleader. It's the complaint itself. Correct, Your Honor. However, you keep saying, well, they were just being very aggressive in their pleading. That doesn't have anything to do with anything, does it? Your Honor, thank you. I believe that it does because there where the underlying plaintiffs are characterizing the motives, they are giving an opinion. That is not a fact. Their opinion as to why Mr. Layton may have done something or other is not a fact. That is an opinion. Because we're an opinion pleading state, not a fact pleading state. I apologize, Your Honor. Because we're an opinion pleading state and not a fact pleading state. Your Honor, we are a fact pleading state, but this was filed in the District of Columbia, which may very well have different traditions. And it's something that could possibly be part of the differences in how this complaint is postured. But that's relatively theoretical. But again, I get back to in the cases where there has been a determination that the duty to defend does not exist, what the courts have said is, we will only find that when it is clear that the actual actions, the complaint of conduct, could only be the result of intentional misconduct. So where there are allegations of fraud, where there are allegations of concealment, where there is a kickback scheme, things that cannot happen as a result of mere negligence. And that's the distinguishing factor here. In this particular instance, the causes of action and many of the factual allegations that really get to what they are complaining that Mr. Layton did wrong, not why he did it wrong, but what he actually did wrong, are premised in negligence. And that is the distinguishing factor between this case here today before you and the other cases that have been dealt with by the court where there was not a duty to defend. As a result, I would respectfully request that the court affirm the trial court finding and affirm the trial court order finding that there was a duty to defend.  Mr. Chalmers, rebuttal, sir? The counsel for the insureds, at least according to my notes, five times during her presentation said, you have to take into account the bigger picture. Bigger picture. I don't know of a duty to defend decision from any reviewing court that ever looked at the bigger picture. You look at the complaint when read in the light of the policy. So we're not a big picture court? Is that what you suggested? This is a big picture court. But when it comes to determining insurance coverage issues, perhaps not. Let me ask you, with my apologies because I know you're up there to speak, but given my ever decreasing attention span, I'd like you to address, if you would, counsel's reference to count five. She specifically pointed out that there is allegations of negligence on count five. And I want to give you a chance to address that specifically, if you would. I think allegations of self-dealing, self-interest, that they put their interests ahead of the beneficiaries, and they did so. The allegation here, defendant Layton and Sanchuk owed plaintiffs a duty of loyalty, which required them to put the interests of the beneficiaries ahead of their own, and to avoid any self-dealing transaction through which they would be compensated on behalf of the trust for their own benefit. Then they alleged the various ways in which they breached the duty they owed, the self-dealing, and it was the overcompensation, incurring expenses grossly in excess of the income, failing to provide reasonable disbursements, putting their interests ahead of the interests of the beneficiaries, refusing to make distributions of assets and income, so they could continue to compensate themselves from the trust. So to your position, this is an allegation of intentional misconduct again? It is an allegation of, there's no allegation of a negligent act, and it goes to Justice DeArmond's point, that this is all part of a scheme. Not a big picture, and not, and again, counsel argued that the allegations of this complaint, at least 5, 6, 7, and 8, are premised in negligence, and yet I gave the challenge when I said there are 147 paragraphs in the verified complaint, and nowhere in their brief do they point to one that alleges a negligent act, error, or omission. What she did argue is that the court needs to look at these allegations, and to determine what ultimately, whether it could ultimately be determined to be negligent. A court doing a duty to defend calculus is not interested in whether the defendant actually did what is alleged. It's irrelevant. It's that it was alleged is what's important. Not whether it's true. The validity of the allegations are of no moment. The 8-corner doctrine is simplistic. You look at the allegations of the complaint in the light of the ensuring agreement of the policy, and if that was correctly done by the circuit court, the circuit court would have found no duty to defend, because there is no negligent act, error, or omission. Whether there could be, because of an amendment, is irrelevant. And unless there are questions, for all those reasons, I'd ask this court to reverse the judgment for ISP mutual, or reverse and remand for the purpose of entering judgment. Thank you. Thank you, Counselor. We'll take this matter on advice and leave recess.